**Donald GREENO, Plaintiff–Appellant,**

v.

**Jon LITSCHER, et al., Defendants–Appellees.**

No. 00–3140.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2001.*

Decided June 25, 2001.

---

* Appellees notified this court that they were never served with process in the district court and would not be participating in this appeal, which has been submitted without a brief from them. After examining of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R.App. P. 34(a)(2).

Before MANION, ROVNER, and EVANS, Circuit Judges.

### ORDER

Donald Greeno, a state prisoner, filed suit under 42 U.S.C. § 1983 against numerous employees of the Wisconsin Department of Corrections, including doctors and nurses ("medical defendants") and prison administrators ("administrative defendants") alleging that his constitutional rights were violated when he received inadequate medical care and when prison officials opened his legal mail and prevented a legal manual from reaching him. The district court dismissed Greeno's complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1), and denied Greeno's motion for reconsideration. Greeno appeals. We affirm in part, reverse in part, and remand for further proceedings.

As an initial matter, we must determine whether we have jurisdiction over this appeal. The district court purportedly dismissed Greeno's complaint "without prejudice for failure to state a claim." Although an order dismissing a complaint without prejudice is normally not appealable, *Furnace v. Board of Trustees of Southern Illinois University,* 218 F.3d 666, 669 (7th Cir.2000), we do not accord "talismanic importance" to the district court's language. *United States v. City of Milwaukee,* 144 F.3d 524, 528 n. 7 (7th Cir.1998). Here, we find that we have jurisdiction.

In this case, the district court's opinion contains language indicating that it considered the matter to be concluded in the federal courts despite the dismissal without prejudice. First, the district court stated that Greeno's state law claims could be "pursued in state court." If the court had intended to allow Greeno to amend his complaint in order to correct the supposed deficiencies in his federal claims, the court would not have needed to admonish Greeno to pursue his state claims in state court. Additionally, the district court directed that in any future proceedings, Greeno should offer "argument not cumulative of that already provided." This language appears to foreclose Greeno from amending his complaint; he had not yet presented any "argument" to the court—only his complaint—at the time his complaint was summarily dismissed. This language can only be reasonably interpreted as preventing Greeno from refiling any claims already presented to the district court in his first complaint. Accordingly, we find that the district court, despite the language in its order, intended to close the door to the federal courthouse on Greeno, and we have jurisdiction over this appeal. *See Kaplan v. Shure Bros., Inc.,* 153 F.3d 413, 417 (7th Cir.1998) (when it is clear that the district court found that an action could not be saved by an amendment to the complaint,

the dismissal is considered final and is appealable).

## I. *Inadequate Medical Care*

Greeno first argues that the district court erred in dismissing his Eighth Amendment claim of inadequate medical care. The allegations of Greeno's 36–page complaint, which we must accept as true for purposes of this appeal, are as follows: sometime in late 1994 or early 1995, Greeno, an inmate in various Wisconsin correctional institutions at the times relevant to his complaint, began to suffer from severe heartburn, intense and persistent pain, and frequent, severe vomiting. While incarcerated at the Racine Correctional Institution between November 1994 and July 1995, Greeno was seen by registered nurses (none of whom is named in this suit) approximately 10 times. He was denied a visit with a doctor, was denied a bland medical diet, was given antacids and was told to tolerate his problem. Despite sending numerous requests to see a doctor to defendant Courtney Greeley, the manager of the Racine Health Services Unit, Greeno was not examined by a doctor for his condition during his time at Racine.

Between July 1995 and June 1996, Greeno was incarcerated at the Fox Lake Correctional Institution. Still suffering from heartburn, pain and vomiting, Greeno was examined numerous times by defendant Dr. Jose Lloren, a medical doctor at Fox Lake. Despite the persistence of Greeno's symptoms, Lloren declined to refer Greeno to a specialist, but rather continued to prescribe antacids and refuse to place Greeno on a bland medical diet. Greeno sent numerous complaints regarding the severity of, and lack of proper treatment for, his symptoms to both defendants Charles Miller, the corrections complaint examiner, and Sharon Zunker, the manager of the Wisconsin Department of Corrections' Bureau of Health Services, but Greeno's treatment was not altered and he was not taken to see a specialist.

From June 1996 to April 2000, Greeno was an inmate at Jackson Correctional Institution in Black River Falls, Wisconsin, and was still suffering from the same symptoms. Greeno was examined by defendant Dr. Rizalino Yray, a medical doctor at Jackson, who told Greeno that antacids were the best treatment for his problem and that he should "learn to live with it," and refused to place Greeno on a bland medical diet. At some point, defendant Judy Nordahl, a registered nurse, denied Greeno the use of antacids for several weeks because he had been exceeding the normal dosage and might have a serious condition. Despite her knowledge of Greeno's condition, however, Nordahl failed to schedule an appointment for Greeno to see a specialist. Greeno was sent to the University of Wisconsin–Madison hospital on several occasions, but those visits were for a skin condition on his face, and his stomach problems were not examined.

Until April 1997, when Greeno was taken to see a gastroenterologist, he alleges that the following pattern was repeated during his stay at Jackson: he was examined by medical staff (including Yray and defendant Dr. Nerissa Avestruz, also a medical doctor at Jackson), who failed to do anything for his condition but prescribe antacids. Greeno filed numerous complaints regarding his inadequate treatment with defendants Sharon Bergstad (the health services unit manager), Michael Sullivan (the former secretary of the Wisconsin Department of Corrections), George Daley (Medical Director for the Wisconsin Department of Corrections Bureau of Health Services), Lyn Jenkins (the inmate complaint examiner at Jackson), and Zunker, but still was neither seen by a specialist nor prescribed a bland diet.

Greeno specifically alleges that in January 1997, Avestruz authorized him to be examined at the University of Wisconsin–Madison Hospital, but Delay overruled Avesruz, thereby forcing Greeno to live with great pain and suffering. Additionally, Greeno alleges that he was sent for observation in February 1997 to another prison, where for two weeks he was given Prilosec, an ulcer medication, and his symptoms stopped. However, upon being transferred back to Jackson, Greeno was denied continued treatment with Prilosec and his symptoms returned.

On April 22, 1997, Greeno was taken to the University of Wisconsin–Madison Hospital, where an endoscopy was performed and an ulcer was detected. Greeno was again placed on Prilosec to treat his ulcer, and his symptoms cleared up. Although Greeno's ulcer has been healed since 1998, unnamed individuals at Jackson's Health Services Unit have twice tried to decrease or discontinue his Prilosec. When they did so, the pain and vomiting returned. Additionally, because Greeno had been taking between 40 and 100 ounces of antacid per month between 1995 and early 1997, he now suffers from chronic constipation. Since May, 1997, Greeno has frequently gone one to two weeks without a bowel movement, causing him to experience severe abdominal pain and bloating. In January 1998, Greeno was given a barium enema test, which showed that he suffered from a redundant sigmoid colon, as well as a sluggish bowel, allegedly from the excessive amounts of antacids he had taken. Avestruz placed Greeno on various laxatives, including some that were inappropriate, and refused further treatment. Despite numerous complaints about his medical care to Jenkins, Miller, Zunker, Nordhal and defendant William Ridgely (also a correctional complaint examiner), Greeno was never sent to another specialist. Apparently he continues to suffer pain and constipation to this day, and de-

pends upon suppositories to move his bowels.

Pursuant to the screening provisions of 28 U.S.C. § 1915A(a), the district court examined Greeno's complaint and dismissed it for failure to state a claim. With respect to Greeno's medical complaints, the court held · that he failed to "allege serious medical needs or deliberate indifference to them" because his ulcer was healed and because he had received treatment for both his ulcer and his constipation.

We review the district court's decision to dismiss Greeno's complaint *de novo*. *Sanders v. Sheahan*, 198 F.3d 626 (7th Cir.1999). The complaint may be dismissed only if it appears beyond a doubt that Greeno can prove no set of facts in support of his claims that would entitle him to relief. *Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir.2000). Because Greeno's complaint was drafted *pro se*, we hold it to less stringent standards than a complaint drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

In order to state a violation of the Eighth Amendment, an inmate must demonstrate that prison officials showed "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference to a serious medical need contains both a subjective and an objective element. First, the deprivation alleged must be, objectively, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, the prison official must have acted with a "sufficiently culpable state of mind;" that is, he must have both been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also have drawn that inference. *Id.* at 837.

■ A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999). Taking the allegations in Greeno's complaint as true, he has alleged an objectively serious medical need. Greeno alleges that he suffered from stomach pains and vomiting of blood for over two years. Despite numerous complaints of severe pain and vomiting, Greeno was not sent to see a gastroenterologist until April 1997, but was instead told by the medical defendants to take the antacids and "live with" his problem. Greeno also alleges that his excessive use of antacids—at the defendants' insistence-caused him to become chronically constipated, and that instead of immediately sending him to a specialist they gave him improper laxatives. These allegations, if true, would suggest to even a lay person that Greeno suffered a serious medical need.

■ Greeno has also sufficiently alleged that the defendants had a sufficiently culpable state of mind. In his complaint, Greeno asserts that "all medical defendants and administrative personnel were deliberate[ly] indifferent to ... [his] serious medical conditions." At this stage of the proceeding, that is sufficient to show that the defendants had the requisite state of mind. *See Antonelli*, 81 F.3d at 1429.

■ The allegations in Greeno's complaint, however, also show that certain defendants should properly be dismissed from the Eighth Amendment claim. First, Greeno fails to allege that Courtney Greeley, the health service manager at Racine, had any personal involvement in the denial of appropriate medical treatment for Greeno. In order to be held liable in a § 1983 action, an individual must have personally caused or participated in the alleged constitutional deprivation. *Zimmerman v.*

*Tribble*, 226 F.3d 568, 574 (7th Cir.2000). Additionally, Greeno's allegations regarding his Eighth Amendment claim made no mention of Phil Kingston, the Warden at Jackson, or Jon Litscher, the current Secretary of the Wisconsin Department of Corrections, and we affirm the district court's dismissal with respect to them as well. We clarify that the dismissal of Greeley, Kingston and Litscher is without prejudice. However, because we find that the complaint states a cause of action against the other defendants, we reverse the dismissal of the Eighth Amendment claims against Michael Sullivan, William Ridgely, Charles Miller, George Daley, Sharon Zunker, Jose Lloren, Rizalino Yray, Nerissa Avestruz, Sharon Bergstad, Judy Nordahl and Lyn Jenkins.

## II. *Interference With Legal Mail*

Greeno also argues that the district court erred in dismissing, pursuant to 28 U.S.C. § 1915A, his First, Sixth and Fourteenth Amendment claims that his rights were violated by certain defendants whom he alleges interfered with his legal mail. Greeno alleges that unnamed mail office personnel at Jackson Correctional Institution opened legal mail from attorneys outside of his presence on at least 16 occasions between August 1998 and January 2000, despite the fact that he filed numerous grievances complaining of the conduct. Greeno further alleges that a legal manual he ordered was not delivered to him, but rather was returned to the publisher by the prison. The district court dismissed these claims as well, holding that Greeno had failed to allege that any of the defendants were personally involved in these incidents.

■ The defendants' alleged conduct would constitute a violation of Greeno's First Amendment rights. Although prison officials may open a prisoner's legal mail in

his presence, *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), repeated instances of a prisoner's legal mail being opened outside of his presence are actionable. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431–32 (7th Cir. 1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated claims); *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 306–07 (7th Cir.1993) (allegations that prisoner's legal mail was opened outside of his presence stated a claim). Greeno's allegations that his legal mail was repeatedly opened for approximately one and one-half years—despite his frequent complaints—are sufficient at this stage to state a First Amendment claim.

However, Greeno's First Amendment claim is properly alleged only against Phil Kingston, the warden at Jackson Correctional Institution. In his complaint, Greeno alleges his belief that Kingston gave instructions to censor his legal mail and to return his legal manual to the publisher. Greeno further states that "[n]o one else had authority" to do so. Judge Shabaz overlooked these allegations when he concluded that Greeno had failed to allege personal responsibility on the part of any of the defendants. Greeno's allegations are sufficient to show that Kingston had personal responsibility for interfering with his First Amendment rights. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (official satisfies personal responsibility requirement if the constitutional deprivation occurs at his direction). However, Greeno fails to allege that any of the other defendants had any personal involvement with the opening of his mail or the return of his book. Therefore, we reverse the district court's dismissal of the First Amendment claim against Kingston, and affirm with respect to the remaining defendants.

 Greeno next argues that the interference with his mail violated his Sixth Amendment right of access to the courts. We affirm the district court's dismissal in part and reverse and remand in part. In order to establish a deprivation-of-access-to-the-courts claim, a prisoner must show that unjustified acts hindered his efforts to pursue a legal claim. *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir.1998). Greeno does not allege that the opening of his legal mail prejudiced him in any litigation, and he therefore fails to state a claim. However, with respect to the legal manual, Greeno asserts that because it was returned to the publisher by prison officials, he missed the filing deadline for an appeal because he had to rely on the purportedly incorrect advice of a prison law clerk. At this juncture, these allegations are sufficient to allege a violation of Greeno's Sixth Amendment rights. As discussed above with regard to Greeno's First Amendment claim, this claim is only properly alleged against Kingston, who Greeno alleges had personal responsibility for interfering with the delivery of his legal manual. Therefore, we reverse the dismissal of Greeno's Sixth Amendment claim regarding the denial of his legal manual with respect to Kingston, and affirm in all other respects.

 Finally, Greeno asserts that the interference with his mail violated his Fourteenth Amendment rights. To the extent that Greeno is arguing that his right of access to the courts was denied without due process, his claim fails because he has not alleged any hindrance to a legal claim. *Nance*, 147 F.3d at 591. To the extent that Greeno is arguing that his legal manual was denied him without due process, his claim fails because he had adequate post-deprivation remedies available to him under Wisconsin law. Wisconsin law provides tort remedies to individuals whose property has been con-

verted or damaged by another. *See* Wis. Stat. §§ 893.35 and 893.51. If a deprivation of property did not occur as the result of some established state procedure (which Greeno does not so allege) and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt v. Taylor* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). We have previously held that Wisconsin's post-deprivation procedures are adequate, albeit in a different context. *See Hamlin v. Vaudenberg,* 95 F.3d 580, 585 (7th Cir. 1996) (inmate complaint review system and certiorari review under Wisconsin law are adequate remedies for deprivations of good-time credits). Accordingly, Greeno failed to state a due process claim.

In light of the above discussion, we also reverse the district court's dismissal of Greeno's purported supplemental state law claims. However, we express no opinion on the merit of any of those claims. Additionally, on June 14, Greeno filed a document we have construed as a motion to file a supplemental brief. This motion is taken with the case, and is denied.

### CONCLUSION

For the foregoing reasons we RE-VERSE the dismissal of Greeno's Eighth Amendment claim against the following defendants: Michael Sullivan, William Ridgely, Charles Miller, George Daley, Sharon Zunker, Jose Lloren, Rizalino Yray, Nerissa Avestruz, Sharon Bergstad, Judy Nordahl and Lyn Jenkins. We AFFIRM the dismissal of Greeno's Eighth Amendment claim against Courtney Greeley, Phil Kingston and Jon Litscher, although with the clarification that the dismissal is without prejudice. We also REVERSE the dismissal of Greeno's First Amendment claims against Phil

Kingston, the dismissal of Greeno's Sixth Amendment claim regarding the denial of his legal manual with respect to Kingston, and the dismissal of Greeno's state law claims. In all other respects, we AFFIRM the decision of the district court. We also DENY Greeno's motion to file a supplemental brief. This case is REMANDED to the district court for further proceedings consistent with this opinion.