# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued January 10, 2014          Decided March 7, 2014

No. 13-5003

ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS AND
ALLIANCE FOR NATURAL HEALTH USA,
APPELLANTS

v.

KATHLEEN SEBELIUS, SECRETARY OF HEALTH & HUMAN
SERVICES,
IN HER OFFICIAL CAPACITY, ET AL.,
APPELLEES

―――――

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00499)

―――――

*Lawrence J. Joseph* argued the cause and filed the briefs for appellants.

*Dana L. Kaersvang*, Attorney, U.S. Department of Justice, argued the cause for appellees.  With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Mark B. Stern*, Attorney. *Alisa B. Klein*, Attorney, U.S. Department of Justice, entered an appearance.

Before: ROGERS, *Circuit Judge*, and WILLIAMS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Plaintiff-appellants Association of American Physicians & Surgeons, Inc. and Alliance for Natural Health USA sued the Secretary of Health and Human Services and the Commissioner of the Social Security Administration[1] in district court, raising a wide variety of claims: (1) constitutional challenges to the Patient Protection and Affordable Care Act ("ACA"), (2) statutory (including Administrative Procedure Act) challenges to actions of HHS and the Commissioner relating to the implementation of ACA and prior Medicare legislation, and (3) a somewhat amorphous attack on the failure of the defendants to render an "accounting" that would (they argue) alert the American people to the insolvency towards which the Medicare and Social Security programs are heading. The district court dismissed the challenges variously for lack of jurisdiction or for failure to state a claim upon which relief can be granted. *Association of American Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19 (D.D.C. 2012) ("*AAPS I*"); see Fed. R. Civ. P. 12(b)(1), (6). Each of the challenges ultimately fails, for the reasons set forth below.

---

[1] The Secretary of the Treasury is also named as a defendant, but appellants direct no arguments specifically to him.

*Constitutional Challenges*

We take the constitutional claims first. If successful, they would radically alter the context for the statutory claims, while there is no chance that the statutory claims, if successful, would avoid the constitutional questions.

Appellants attack 26 U.S.C. § 5000A, often spoken of informally as the ACA's individual health insurance mandate, which was sustained as a valid exercise of the taxing power in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*").[2] *Id.* at 2593-2600; *Id.* at 2609 (Ginsburg, J., joined by Breyer, Kagan, and Sotomayor, JJ., concurring) (agreeing that "the minimum coverage provision is a proper exercise of Congress' taxing power"). They argue that the tax violates both the Fifth Amendment's prohibition of the taking of private property without just compensation and the origination clause, U.S. Const. art. I, § 7, cl. 1, which provides that "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

As to takings, the district court applied the Supreme Court's opinion in *Brushaber v. Union Pac. Railroad Co.*, 240

---

[2] Appellants mentioned the corresponding provision for employers in their opening brief but provided no rationale for treating it differently from the individual mandate. Appellants also mentioned an equal protection argument in their opening brief, but only in the standing section, not in the merits section. Later they appeared to advance arguments involving the equal protection clause and the employer provisions in letters filed under Fed. R. App. P. 28(j) (e.g., letters of July 15, 2013). Under these circumstances we have no occasion to address the claims involving the employer mandate or the equal protection clause.

U.S. 1, 24-25 (1916), holding that an otherwise valid tax could run afoul of the takings clause only in a "case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property." See *AAPS I*, 901 F. Supp. 2d at 38-39.

In an apparent effort to squeeze § 5000A into that narrow category, appellants argue that the tax (and the insurance program of which it is a part) asks "healthy private individuals to support unhealthy private individuals." Appellants' Br. 32. In support they cite the Court's observation in *Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005), that "it has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B,* even though *A* is paid just compensation." *Id*. at 477. But it is impossible to read that sentence in *Kelo* (even if we were to treat it as a holding, which it isn't) as suggesting that any redistributive purpose sweeps an otherwise valid tax into the narrow group of measures condemned by *Brushaber*.

Appellants make much of an assertion that their takings clause challenge is as-applied rather than facial. But other than saying so, they give us no reason why this should yield a more favorable outcome for the claim. We thus affirm the district court.

In support of their origination clause claim, appellants argue that though the bill ultimately eventuating in the ACA originated in the House, it was not, as it left that chamber, a revenue bill; only amendments added in the Senate that made it such a bill. Appellants raised this argument for the first time only after an order by the district court, after the Court issued its decision in *NFIB*, inviting supplemental pleadings, well after appellants filed their opposition to the government's motion to dismiss. The district court dismissed the claim on

the principle that when a plaintiff files an opposition to a motion to dismiss, and addresses only some of the defendant's arguments, the ones not addressed may be taken as conceded. *AAPS I*, 901 F. Supp. 2d at 37-38 (citing *Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80 (D.D.C. 2009)). Appellants do not contest the general principle, but argue that because they raised the origination clause claim in supplemental briefing ordered by the district court, there was no waiver or forfeiture.

Insofar as the government recognizes that the order for supplemental briefing renders this situation atypical, it focuses on the fact the order required both parties to file their supplemental briefs simultaneously. It's hard to see how the mere fact of simultaneous filing helps the government. If it felt that appellants had improperly raised new arguments, it was free to seek leave to object on that ground, to offer contrary arguments on the merits, or to move to amend its pleadings, Fed. R. Civ. P. 15. It did none of these.

Regardless of the simultaneous filings, two considerations support the district court's decision to treat the argument as conceded. First, the briefing in *NFIB* and the lower court decisions reviewed in *NFIB*, long before the decision issued, clearly raised the possibility that § 5000A would be sustained as a tax. See, e.g., *NFIB*, 132 S. Ct. at 2593-2600 (opinion of Chief Justice Roberts) (addressing the government's tax theory), 2650-55 (opinion of Justices Scalia, Kennedy, Thomas and Alito) (same). The government offered that theory as a defense in this very case, see Motion to Dismiss 5, 44-47, and appellants resisted the claim with roughly five pages of their opposition to that motion, see Opposition to Motion to Dismiss 41-46. Thus the decision in *NFIB* did no more than render the tax theory more salient than it had been.

Second, the district court called for supplemental briefing only to address "whether [*NFIB*] and *Hall v. Sebelius* [667 F.3d 1293 (D.C. Cir. 2012), addressed below] require the dismissal of any counts." It was thus much more limited than plaintiffs now suggest; it did not invite briefing "on the impact" of *NFIB*. Compare Reply Br. 17-18. The district court was therefore perfectly reasonable in applying the standard rule inferring concession from gaps in a plaintiff's opposition to a motion to dismiss.

We note, though we do not rely on, the presence of an origination clause challenge to § 5000A in *Sissel v. U.S. Dep't of Health & Human Servs.*, 951 F. Supp. 2d 159 (D.D.C. 2013), *appeal pending*, No. 13-5202 (D.C. Cir.).

*Statutory (Including APA) Claims*

Appellants' first statutory claim is an objection to provisions in a Social Security Administration ("SSA") handbook, the Social Security Program Operations Manual System ("POMS"). These provisions explain that individuals entitled to social security benefits are automatically entitled to Medicare Part A benefits. POMS HI 00801.002, POMS HI 00801.034, and POMS GN 00206.020. Appellants argue that the handbook provisions exceed the SSA's statutory authority and that their adoption should have been preceded by notice-and-comment rulemaking. The district court dismissed the claim on a variety of standing theories. *AAPS I*, 901 F. Supp. 2d at 29-34. We affirm on a somewhat simpler basis.

First, appellants' substantive attack on the POMS provisions is clearly foreclosed by our decision in *Hall v. Sebelius*, 667 F.3d 1293 (D.C. Cir. 2012), holding that the statutory text establishing Medicare Part A precludes any option not to be entitled to its benefits (though eligible persons are free not to *exercise* their entitlement). *Id*. at 1295-

97. Although *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998), normally bars a court from addressing a substantive merits claim before addressing all jurisdictional vulnerabilities (the government presses several, such as the channeling provision of 42 U.S.C. § 405(h)), there is an exception within *Steel Co.* for a merits decision resting entirely on prior or simultaneous rulings on an identical merits question, *id.* at 98-101.

Second, appellants' claim to notice-and-comment procedures under the APA fails because our decision in *Hall* eliminates any possibility that such procedures could remedy appellants' alleged injury. It is true that a party asserting a procedural injury enjoys a somewhat relaxed test as to whether compliance with the procedural requirement would lead to "redress" of the party's substantive injury (i.e., lead to a less injurious outcome), see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992), but here there is no way whatsoever that notice-and-comment procedures could help appellants, see, e.g., *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41-43 (1976). *Hall* did not hold that the POMS permissibly interpreted the statute to preclude withdrawal by eligible persons from the entitlement to Medicare Part A. Rather it held that the *statute* itself barred any such effort to escape entitlement. *Hall*, 667 F.3d at 1296 ("under the law, plaintiffs remain legally entitled to the benefits regardless of whether they accept them"); *id.* ("plaintiffs' position is inconsistent with the statutory text"). Accordingly, all the procedure in the world could not lawfully lead the SSA to a conclusion that would redress appellants' substantive injury.

Appellants' second statutory claim attacks an interim final rule, Changes in Medicare and Medicaid Programs, 75 Fed. Reg. 24,437 (May 5, 2010) ("IFR"), and two 2009 changes to a Medicare claims processing manual, Change

Requests 6417 and 6421, on both procedural and substantive grounds. ("Change Request" is the term for an update to HHS's online manual, see Complaint, ¶ 76). The district court rejected the claims in part on a standing theory and in part on the merits. *AAPS I*, 901 F. Supp. 2d at 39-46. The government argues that the claims are moot, and we agree.

The district court's discussion thoroughly describes the IFR and the Change Requests. It is enough for our purposes to observe that they govern the process by which physicians may "opt out" of participation in Medicare Part B, and, having opted out, may nonetheless refer patients for services covered by Part B.

As is common with interim final rules, the IFR here was superseded by a rule promulgated after notice and comment, Changes in Medicare and Medicaid Programs, 77 Fed. Reg. 25,284 (Apr. 27, 2012), issued while this case was pending in the district court. The government argues that the procedures accompanying adoption of the 2012 rule clearly moot appellants' procedural claim. Moreover, the Secretary made substantive changes to the interim rule as a result of the comments. See, e.g., *id.* at 25,291-92. Appellants do not dispute these points.

In their opening brief, appellants make the startling argument that their claim is not moot because, "once the 2012 rule is invalidated, the Administration will need to retreat to the procedurally defective actions challenged here." Appellants' Br. 49. Appellants cite no case or reasoning to support the idea that a claim can be saved from mootness by the court's blithely hypothesizing that a whole other set of rules, not at issue in the present case, or so far as appears even challenged in any proceeding, may be invalid. Appellants also argue that when we hold ACA unconstitutional as a violation of the origination clause, the IFR, etc., will inevitably fall. We may assume arguendo that the second step

in this argument is sound, but that is of no help to appellants: their premise—that we would vindicate their origination clause claim—has proven incorrect. Appellants further argue that the "substantive defects" carry over from the IFR to the 2012 rule, and that this commonality defeats mootness. But it is clearly preferable as a general matter to review a set of claims in the context of an extant rather than a defunct rule, and appellants do not even argue that the passages to which they object are so isolated as to defeat that general principle.

*Claim for an "Accounting"*

Finally, appellants claim that the Social Security Commissioner and the Secretary have violated their "fiduciary and equitable duties," Compl. ¶¶ 111, 117, by failing to provide an "honest accounting" of the financial situation facing Social Security and Medicare. *Id.* at ¶¶ 106-117. The district court held that plaintiffs did not identify an injury sufficient for standing and dismissed on that ground, *AAPS I*, 901 F. Supp. 2d at 46, a position endorsed by the government on appeal. The plaintiffs stress that, contrary to the conclusion of the district court, they have asserted such an injury, pointing to the particular interest in the solvency of the Medicare Program held by the physician members of appellant organizations.

We need not address whether appellants' alleged injury should be classified as merely an abstract interest "in proper application" of the laws, as the district court found, *AAPS I*, 901 F. Supp. 2d at 46, citing *Lujan*, 504 U.S. at 573-74, or as a harm that, though very widely shared, is sufficiently concrete to satisfy Article III's injury requirement, *FEC v. Akins*, 524 U.S. 11, 23-25 (1998). Appellants provide no legal argument for their claims against the Commissioner and Secretary. They do not cite a statute, the Constitution, or any

case law for the foundation of the alleged fiduciary duties; they do not even sketch a penumbra possibly emanating from any part of the laws or Constitution of the United States. Although "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction," *Steel Co.*, 523 U.S. at 89, it is equally clear that where a claim is "wholly insubstantial and frivolous," it may be dismissed for want of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). As the filings in the district court and before this court do not disclose even an arguable theory, we find a want of jurisdiction over the claim to an "accounting."

* * *

For the reasons stated above, the judgment of the district court is

*Affirmed*.